UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LOUIS SANQUINI, individually and on behalf of all
others similarly situated,                                          Index No. 26-5880

                              Plaintiff,              **CLASS ACTION**
         - against-                                   **COMPLAINT**

STUBHUB HOLDINGS, INC., ERIC H. BAKER and             **JURY TRIAL DEMANDED**
DOES 1-10;

                              Defendant.
-------------------------------------------------------------------X

        Plaintiff LOUIS SANQUINI, individually and on behalf of all others similarly situated

("Plaintiff"), by and through his undersigned attorneys, hereby files this class action Complaint

against Defendants StubHub Holdings, Inc. ("StubHub") and Eric H. Baker ("Baker")

(collectively, "Defendants"), and alleges as follows, based on personal knowledge as to

Plaintiff's own conduct and on information and belief, including the investigation of counsel, as

to all other matters:

                              **NATURE OF THE ACTION**

        1.      StubHub markets itself to consumers as a neutral "marketplace for fans to buy and

sell tickets" — a platform that merely connects individual fans who can no longer use their

tickets with other fans who want them.

        2.      In truth, according to StubHub's own filings with the U.S. Securities and

Exchange Commission ("SEC"), StubHub's founder, CEO, and Chairman, Defendant Eric Baker,

is also the part owner and managing director of Andro Capital, an entity that has sold tickets on

StubHub's own platform since approximately 2008, and StubHub has separately entered into

arrangements with Andro's affiliate, Colloquy Capital, to provide short-term financing and

referrals to other large-scale, professional ticket resellers ("mass scalpers") who list tickets on StubHub.

3.     StubHub's SEC filings further disclose that StubHub has paid fees to and received fees from Andro in connection with Andro's ticket sales, that StubHub has at times owed Andro millions of dollars in ticket proceeds, and that StubHub agreed to cover certain of Andro's ticket-management costs — none of which was disclosed to ordinary consumers using the platform.

4.     Industry researchers estimate that mass scalpers account for a substantial majority — as much as 70 to 80 percent — of ticket inventory on major secondary ticketing platforms, including StubHub.

5.     Plaintiff and members of the proposed Class purchased tickets on StubHub believing they were buying from individual fans through a neutral marketplace, when in fact StubHub's own leadership has a direct financial stake in, and StubHub itself helps finance, the large-scale resale operations that supply much of the platform's inventory.

6.     Defendants' failure to disclose this conflict of interest, while affirmatively marketing StubHub as a fan-to-fan marketplace, deceived Plaintiff and the Class and caused them to pay prices, and accept terms, they would not have accepted had the truth been known.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (a) the proposed Class contains more than 100 members; (b) at least one member of the proposed Class is a citizen of a state different from at least one Defendant; and (c) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendants because StubHub Holdings, Inc. maintains its principal executive offices in this District at 175 Greenwich Street, 59th Floor,

New York, New York 10007, and Defendant Baker directs StubHub's operations from this District.

9.  Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and Defendant StubHub resides in this District and Defendant Baker engaged in all or a substantial amount of the actions and conduct alleged herein in this District and by and for the benefit of StubHub.

## PARTIES

10.  Plaintiff Louis Sanquini is a citizen of New York.

11.  Defendant StubHub Holdings, Inc. is a Delaware corporation with its principal place of business at 175 Greenwich Street, 59th Floor, New York, New York 10007.

12.  Defendant Eric H. Baker is, upon information and belief, a citizen of California, and is the founder, Chief Executive Officer, and Chairman of the Board of StubHub Holdings, Inc., as well as a part owner and managing director of Andro Capital.

13.  Defendants Does 1-10 are people and/or entities who, upon information and belief, were complicit in, aided and abetted, and/or benefitted from, the wrongful actions of the other Defendants, including but not limited to people and/or entities that helped bring about the fraud alleged herein.

## FACTUAL ALLEGATIONS

14.  StubHub's public-facing marketing describes the company as a "marketplace for fans to buy and sell tickets," and in response to press inquiries StubHub has stated that it "does not own, possess, or sell tickets" and is merely "a technology platform that connects independent buyers and sellers."

15.  StubHub's SEC filings, including its Form S-1 Registration Statement (filed March 21, 2025, File No. 333-286000, and as amended August 26, 2025), disclose that

3

Defendant Baker is the managing partner of Andro Capital, described as a professional ticket reseller that has sold tickets through StubHub since 2008.

16.    Those filings further disclose that StubHub has, at various points, earned fees from Andro's ticket sales, owed Andro millions of dollars in ticket proceeds and related costs, paid Andro's affiliate approximately $1.6 million in 2023 in connection with ticket inventory, and agreed to cover certain of Andro's ticket-management costs.

17.    In 2024, StubHub reportedly entered into an arrangement with Colloquy Capital, an Andro affiliate, to refer certain sellers on the platform to Colloquy for short-term financing to fund bulk ticket purchases for resale on StubHub.

18.    None of these related-party relationships — the CEO's ownership interest in a major platform seller, or the platform's financing arrangements with that seller's affiliate — is or was disclosed to ordinary Plaintiff or consumers at the point of purchase, in StubHub's consumer-facing marketing, or in its consumer terms of service.

19.    A reasonable consumer, such as Plaintiff would consider it material that the CEO of a self-described neutral "marketplace for fans" personally profits from, and that the marketplace itself helps finance, the professional resale operations that supply much of its own ticket inventory.

20.    On or about September, 2024, Plaintiff purchased four tickets on StubHub to a New York Red Bulls v. New York City FC Major League Soccer match, paying $131.48 for the tickets themselves plus $76.34 in StubHub service and delivery fees, for a total of $207.82. Plaintiff received and used all four tickets to attend the match.

21.    On or about December, 2023, Plaintiff separately purchased two tickets on StubHub to a KISS concert at Madison Square Garden in New York, New York, which Plaintiff

also received and used.

22.    Plaintiff's claims do not concern non-delivery of tickets; rather, Plaintiff purchased on both occasions on the belief, induced by Defendants' marketing, that the tickets were being resold by individual fans through a neutral marketplace, and Plaintiff would not have purchased at the prices paid — or at all — had Plaintiff known that Defendant StubHub's CEO held a financial interest in, and StubHub itself helped finance, the professional resale operation(s) supplying much of the platform's inventory.

23.    Plaintiff's September 2024 purchase is the primary transaction underlying this action; Plaintiff's December 2023 purchase is alleged as further evidence of a consistent, repeated reliance on Defendants' representations across multiple, unrelated events.

24.    Plaintiff's belief that StubHub was a neutral, fan-to-fan marketplace, described in the preceding paragraph, was based specifically on the statement on StubHub's website describing it as 'the world's largest marketplace for fans to buy and sell tickets,' which Plaintiff read before both purchases"; "StubHub's FAQ page, which Plaintiff read before purchasing, stating that StubHub 'does not own, possess, or sell tickets' and is 'a technology platform that connects independent buyers and sellers'"; or other specific language, screen, or representation Plaintiff actually saw, with the approximate date(s) viewed; order confirmation communications from Stub Hub which included guarantee statements and seller-type disclosures; a "How Stub Hub Works" publication by Stub Hub; checkout/listing screens — which made statements substantially similar to or to the effect that the tickets were "Sold by [the name of the seller (not Stub Hub)]; and Sold by [username]"; StubHub's "FanProtect Guarantee" and "marketplace for fans"; among possible other communications.

25.    At the times mentioned herein, Plaintiff preferred "peer to peer" ticket event sales

5

over professional resellers, "scalpers" or others who either acted as a "strawman" or third party who interposed their own fees, costs and expenses, thereby making the ticket prices much higher.

26.    It is further alleged that members of the Class held these same beliefs as to StubHub and relied thereon in the same means and to the same extent as Plaintiff.

27.    Had Plaintiff known, at the time of either purchase described above, that Defendants' CEO held a financial interest in, and that StubHub itself helped finance, the professional resale operation(s) supplying much of the platform's inventory, Plaintiff would not have not used Stub Hub; would not have purchased the tickets at all from Stub Hub; would have attempted to locate a seller Plaintiff could verify was an individual fan; declined to pay more than a very small administration fee for the tickets; or sought tickets through the applicable team's or venue's official box office instead because Plaintiff specifically preferred and prefers buying resale tickets from individual fans over professional resellers, believing this results in fairer, more market-driven pricing.

28.    Had Plaintiff and members of the Class known of this conflict of interest, they would not have purchased tickets on StubHub, or would not have paid the prices they paid, or would have sought tickets through an alternative source.

### CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action individually and on behalf of a proposed class defined as: "All persons in the United States who purchased one or more tickets through StubHub's platform during the period the applicable initial date of alleged violations as permitted by law and statute((s) of limitation through the present, and who received and used the ticket(s) purchased (the "Class")." Excluded from the Class are: (a) Defendants, their officers and directors; (b) the judicial officer to whom this case is assigned; and (c) any person whose claim arises from non-delivery, cancellation, or invalidity of a purchased ticket, which claims are the

subject of other pending litigation, including *Moghal, et al. v. StubHub Inc.*, No. 1:26-cv-05569 (S.D.N.Y.).

30. This Class is expressly limited to the pricing- and disclosure-based injury described herein — namely, that Class members paid for tickets, and received them, without knowing of Defendants' undisclosed financial interest in the sellers supplying platform inventory.

31. It does not encompass, and is not brought on behalf of, any person or claim relating to a ticket that was never delivered, was canceled, or was invalid, which injury is distinct and is the subject of separate litigation.

32. Numerosity (Fed. R. Civ. P. 23(a)(1)): StubHub processed approximately $9.2 billion in ticket transactions in 2025 alone; the Class accordingly consists of many thousands, if not millions, of members, making joinder impracticable.

33. Commonality (Rule 23(a)(2)): Common questions of law and fact include, among others: (a) whether Defendants misrepresented or omitted material facts about StubHub's relationship with Andro Capital and Colloquy Capital; (b) whether that conduct violated applicable consumer-protection statutes; and (c) whether Class members are entitled to damages or restitution.

34. Typicality (Rule 23(a)(3)): Plaintiff's claims are typical of the claims of the Class, as all arise from the same alleged course of conduct by Defendants.

35. Adequacy (Rule 23(a)(4)): Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in class action litigation.

36. Predominance and Superiority (Rule 23(b)(3)): Common questions predominate over individual questions, and a class action is superior to other available methods for the fair

and efficient adjudication of this controversy.

## CAUSES OF ACTION

### COUNT I
### Fraudulent Concealment / Fraudulent Misrepresentation

37.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

38.    Defendants represented to consumers, including Plaintiff and the Class, that StubHub is a neutral "marketplace for fans to buy and sell tickets" and that it does not own, possess, or sell tickets.

39.    Defendants concealed from Plaintiff and the Class the material fact that StubHub's CEO owns and manages a major seller on the platform, and that StubHub finances other large-scale sellers, while having a duty to disclose such facts given their partial representations regarding the nature of the marketplace.

40.    Defendants knew or recklessly disregarded that these omissions were material and would affect a reasonable consumer's decision to purchase, or the price a reasonable consumer would pay, on the platform.

41.    Plaintiff and the Class reasonably relied on Defendants' representations and omissions in deciding to transact on StubHub.

42.    As a direct and proximate result, Plaintiff and the Class suffered damages, including the amounts paid for tickets they would not have purchased, or would have purchased at a lower price, absent Defendants' fraudulent concealment.

### COUNT II
### Violation of State Consumer Protection Statutes
### N.Y. Gen. Bus. Law §§ 349 and 350

43.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

44.    Defendants' conduct as alleged above constitutes unfair, deceptive, and/or

8

unlawful acts or practices in trade or commerce in violation of New York's and other state's consumer-protection statutes, *e.g.*, N.Y. Gen. Bus. Law §§ 349 and 350 and California Business and Professions Code §17200, *et. seq.*

45. Plaintiff and the Class suffered ascertainable losses as a result of Defendants' unfair and deceptive practices and are entitled to actual damages, statutory damages, restitution, and/or injunctive relief as provided by the applicable statute(s).

## COUNT III
## Unjust Enrichment

46. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

47. Defendants received and retained fees, commissions, and other financial benefits from Plaintiff and Class members' ticket purchases under circumstances that would make it inequitable for Defendants to retain those benefits without disclosing their financial relationship with major sellers on the platform.

48. Plaintiff and the Class are entitled to restitution and disgorgement of the amounts by which Defendants were unjustly enriched.

## COUNT IV
## Breach of the Implied Covenant of Good Faith and Fair Dealing

49. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

50. Plaintiff and Class members entered into a User Agreement with StubHub each time they transacted on the platform, which agreement contains an implied covenant of good faith and fair dealing.

51. Defendants breached that implied covenant by operating the platform in a manner that favored an entity in which StubHub's own CEO held a financial interest, while representing the platform as a neutral marketplace for individual fans, thereby depriving Plaintiff and the Class of the benefit of their bargain.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court:

a.    Certify this action as a class action under Fed. R. Civ. P. 23, appoint Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

b.    Enter judgment in favor of Plaintiff and the Class and against Defendants on each Count;

c.    Award compensatory, statutory, and/or restitutionary damages, as applicable, in an amount to be determined at trial and that the aggregate amount in controversy across the whole class exceeds $5,000,000;

d.    Award pre- and post-judgment interest;

e.    Award reasonable attorneys' fees and costs as permitted by law;

f.    Grant appropriate injunctive relief requiring Defendants to disclose material related-party relationships to consumers; and

g.    Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
       July 12, 2026

PARNESS LAW FIRM, PLLC

By:    /s/ Hillel I. Parness   
Hillel I. Parness (HP-1638)
136 Madison Ave., 6th Floor
New York, New York  10016
(212) 447-5299
hip@hiplaw.com
*Attorneys for Plaintiff Louis Sanquini*