**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUIS SANQUINI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STUBHUB HOLDINGS, INC., ERIC H. BAKER, and DOES 1-10,

Defendants.

Case No. 1:26-cv-05880-JSR

**ORAL ARGUMENT REQUESTED**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....................1

FACTUAL BACKGROUND ....................3

A. StubHub's User Agreement and Arbitration Clause ....................3

B. Plaintiff Agreed to the User Agreement Each Time He Purchased Tickets ....................5

C. Plaintiff Files This Lawsuit ....................6

ARGUMENT ....................7

I. THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS INDIVIDUALLY ....................8

A. A Valid Written Agreement to Arbitrate Exists ....................9

1. StubHub's Website Provided Plaintiff with Conspicuous Notice ....................9

2. Plaintiff Unambiguously Assented to the Arbitration Agreement ....................10

B. Questions of Arbitrability Are Delegated to the Arbitrator ....................12

C. Even If the Court Decides Arbitrability, Plaintiff's Claims Fall Within the Scope of the Arbitration Clause ....................13

D. Plaintiff's Claims Against StubHub's Chairman and CEO Are Arbitrable ....................15

E. The Court Should Stay This Action Pending Arbitration ....................17

II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ....................17

A. Plaintiff Fails to State a Claim for Fraudulent Concealment / Fraudulent Misrepresentation ....................17

B. Plaintiff Fails to State a Claim Under GBL §§ 349/350 ....................21

C. Plaintiff's Unjust Enrichment Claim Is Foreclosed by the Express Contract ....................24

D. Plaintiff's Implied Covenant Claim Fails ....................24

CONCLUSION ....................25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adeghe v. Procter & Gamble Co.*,
2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) ....................22

*Ajzenman v. Office of the Commissioner of Baseball*,
CV 20-3643 DSF (JEMx), 2020 WL 6037140 (C.D. Cal. Sept. 14, 2020) ....................10, 11

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ....................17

*Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*,
752 N.Y.S.2d 400 (2d Dep't 2002) ....................21

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) ....................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................7

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................8

*Barreto v. Westbrae Nat., Inc.*,
518 F. Supp. 3d 795 (S.D.N.Y. 2021) ....................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................7

*Bensadoun v. Jobe-Riat*,
316 F.3d 171 (2d Cir. 2003) ....................7

*Berlinger v. viagogo Ent., Inc.*,
No. 25-cv-04380 (VM), 2026 WL 203538 (S.D.N.Y. Jan. 27, 2026) ....................2, 10, 14

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................9, 10, 11

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
114 Cal. Rptr. 2d 109 (Ct. App. 2001) ....................24

*Capolongo v. Spotify USA Inc.*,
No. 25-cv-9216 (JGK), 2026 WL 1179653 (S.D.N.Y. Apr. 30, 2026) ....................17

*Christensen v. StubHub, Inc.*,
No. 2:25-cv-01957-JNW, 2026 WL 937969 (W.D. Wash. Apr. 7, 2026)....10, 11

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
516 N.E.2d 190 (N.Y. 1987)....24

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995)....13

*Contec Corp. v. Remote Sol. Co.*,
398 F.3d 205 (2d Cir. 2005)....13

*Corsello v. Verizon New York, Inc.*,
967 N.E.2d 1177 (N.Y. 2012)....24

*Cosgrove v. Oregon Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021)....21

*Credit Suisse Sec. (USA) LLC v. Hilliard*,
469 F. Supp. 2d 103 (S.D.N.Y. 2007)....14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....8

*Denney v. BDO Seidman, L.L.P.*,
412 F.3d 58 (2d Cir. 2005)....16

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*,
375 F.3d 168 (2d Cir. 2004)....20

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....21

*Gale v. IBM*,
9 A.D.3d 446 (N.Y. App. Div. 2004)....23

*Genesco, Inc. v. T. Kakiuchi & Co.*,
815 F.2d 840 (2d Cir. 1987)....14

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014)....23

*Guz v. Bechtel Nat. Inc.*,
100 Cal. Rptr. 2d 352 (Cal. 2000)....25

*Hamm v. Capsule Corp.*,
No. 22-CV-05435 (JSR), 2022 WL 4468028 (S.D.N.Y. Sept. 26, 2022)....15

*Harris v. TD Ameritrade Inc.*,
338 F. Supp. 3d 170 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021)........................7

*Heabeart v. Coinbase, Inc.*,
No. 25-cv-9197 (JSR), 2026 WL 1250578 (S.D.N.Y. May 7, 2026) ....................................14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019).........................................................................................................9, 12

*Hong v. StubHub, Inc.*,
No. 2:24-cv-03318-SB-JC, 2024 WL 4720924 (C.D. Cal. Sept. 9, 2024) ........................10, 11

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019)...................................................................................................6

*In re Duke Energy Corp. Sec. Litig.*,
282 F. Supp. 2d 158 (S.D.N.Y. 2003)...................................................................................19

*In re Prime Energy Consumer Litig.*,
803 F. Supp. 3d 242 (S.D.N.Y. 2025)...................................................................................23

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)...................................................................................22

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
2008 WL 552482 (N.D. Cal. Feb. 27, 2008) .........................................................................25

*Kaiser v. StubHub, Inc.*,
No. 24-cv-00044 (JLR), 2024 WL 3445059 (S.D.N.Y. July 17, 2024) ......................... *passim*

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)...................................................................................................17

*Kaurloto v. U.S. Bank, N.A.*,
No. 16-cv-06652-JFW-GJSx, 2016 WL 6808117 (C.D. Cal. Nov. 17, 2016) ........................25

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ...............................................................................................9

*Kern v. StubHub, Inc.*,
No. 24-cv-00871 (AT), 2024 WL 5283923 (S.D.N.Y. Dec. 17, 2024)........................... *passim*

*Klein v. Chevron U.S.A., Inc.*,
137 Cal. Rptr. 3d 293 (Ct. App. 2012).....................................................................................24

*Knox v. Dean*,
140 Cal. Rptr. 3d 569 (Ct. App. 2012).....................................................................................18

*Kottler v. Deutsche Bank AG*,
607 F. Supp. 2d 447 (S.D.N.Y. 2009)....................8

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013)....................16

*Kransco v. Am. Empire Surplus Lines Ins. Co.*,
97 Cal. Rptr. 2d 151 (Cal. 2000)....................25

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)....................18

*Martin v. New Am. Cinema Grp., Inc.*,
No. 1:22-cv-05982 (JLR), 2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023)....................20

*Maurizio v. Goldsmith*,
230 F.3d 518 (2d Cir. 2000)....................21

*McCracken v. Verisma Sys., Inc.*,
91 F.4th 600 (2d Cir. 2024)....................22

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....................9

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................18

*Nguyen v. FXCM Inc.*,
364 F. Supp. 3d 227 (S.D.N.Y. 2019)....................18

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023)....................10

*Oden v. Boston Scientific Corp.*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018)....................23

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024)....................11, 13

*Patterson v. Raymours Furniture Co.*,
96 F. Supp. 3d 71 (S.D.N.Y. 2015)....................7

*Penning v. NVIDIA Corp.*,
2026 WL 1433313 (N.D. Cal. May 21, 2026)....................11

*Pilon v. Discovery Commc'ns, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025)....................11

*Ragone v. Atl. Video at Manhattan Ctr.*,
595 F.3d 115 (2d Cir. 2010)....................15, 16

*Rattagan v. Uber Techs., Inc.*,
324 Cal. Rptr. 3d 433 (Cal. 2024)....................18

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................9, 12

*Ritani, LLC v. Aghjayan*,
970 F. Supp. 2d 232 (S.D.N.Y. 2013)....................21

*Rockridge Tr. v. Wells Fargo, N.A.*,
985 F. Supp. 2d 1110 (N.D. Cal. 2013)....................25

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991)....................13

*Small v. Lorillard Tobacco Co.*,
94 N.Y.2d 43 (1999)....................24

*Smith v. RPA Energy, Inc.*,
732 F. Supp. 3d 278 (S.D.N.Y. 2024)....................15

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................17

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015)....................8

*Tasini v. AOL, Inc.*,
851 F. Supp. 2d 734 (S.D.N.Y. 2012)....................22

*Thomas James Assocs., Inc. v. Jameson*,
102 F.3d 60 (2d Cir. 1996)....................13

*Warren v. John Wiley & Sons, Inc.*,
952 F. Supp. 2d 610 (S.D.N.Y. 2013)....................21

*Welch v. TD Ameritrade Holding Corp.*,
No. 07 Civ. 6904 (RJS), 2009 WL 2356131 (S.D.N.Y. July 27, 2009)....................19

*Whalen v. Pfizer, Inc.*,
862 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005)....................23

*Wynn v. Topco Associates, LLC*,
No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021)....................23

## STATUTES

9 U.S.C.
§ 1, *et seq*. ....................................1
§ 2....................................3, 8
§ 3....................................8, 17
§ 4....................................8

New York General Business Law
§ 349....................................3, 21, 22
§ 350....................................3, 21, 22

## RULES

Fed. R. Civ. P.
8....................................7
9(b)....................................3, 7, 18, 20
12(b)(6) ....................................7

Defendants StubHub Holdings, Inc.[1] and Eric H. Baker (collectively, "Defendants") respectfully move the Court to enter an order compelling Plaintiff Louis Sanquini ("Plaintiff") to submit his claims to binding, individual arbitration pursuant to the express terms of the parties' arbitration agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., and to stay further proceedings pending arbitration, or, in the alternative, dismissing Plaintiff's Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT[2]

StubHub and its affiliates operate the world's largest online ticketing marketplace, connecting buyers and sellers of tickets for concerts, sporting events, and other live entertainment in more than 200 countries around the globe. This lawsuit was filed by an individual who purchased concert and soccer tickets through StubHub, received the tickets he ordered, used them to attend the events, and never lodged a complaint. Nearly two years later, Plaintiff claims that he was somehow misled because StubHub's CEO allegedly holds ownership interests in entities that either resell tickets on StubHub or provide financing to other resellers. But Plaintiff does not allege that there was anything defective about the tickets he purchased. Nor does he allege that either of his transactions involved tickets sold by or otherwise connected to any of these third parties, although this flaw in his claims is hardly surprising given that tickets connected to these third parties are a microscopic fraction of StubHub's annual transaction volume. In short, Plaintiff has

[1] StubHub Holdings, Inc. ("Holdings") is a publicly listed holding company that does not engage in transactions with consumers. Holdings assumes that it was inadvertently named as a party and that Plaintiff intended to name its wholly owned subsidiary StubHub, Inc., which operates StubHub's online ticket marketplace in the United States. *See* ECF No. 22. As used throughout this brief, the term "StubHub" refers to StubHub, Inc.

[2] Unless otherwise noted, internal citations and quotation marks have been omitted, and citations to "Ex. _" refer to exhibits attached to the declarations of James Wright and Jason C. Hegt, submitted herewith.

suffered no injury and has no claim. But this lawsuit fails for a much more fundamental reason, which is that both times Plaintiff purchased tickets on StubHub he agreed to StubHub's User Agreement, which requires that any dispute arising from his use of the platform be resolved through binding, individual arbitration.

**Motion to Compel Arbitration:** Both of Plaintiff's purchases required him to agree to StubHub's Global User Agreement (the "User Agreement") to complete the transactions. The User Agreement contains a broad, mandatory arbitration provision requiring that "any and all disputes or claims" relating "in any way to or arising out of" the User Agreement, use of StubHub's website or services, or any tickets purchased through the platform, be resolved through final and binding individual arbitration. Where, as here, parties have agreed to resolve a dispute through arbitration, courts will hold the parties to that agreement. Within the last two years, three judges of this Court, applying the identical arbitration provision contained in the same User Agreement that governs StubHub's platform held that the agreement is valid and enforceable, that the provision is "the paradigm of a broad clause" giving rise to a presumption of arbitrability, and that claims challenging the companies' marketing practices and fee disclosures fall squarely within its scope and must be arbitrated. *See Berlinger v. viagogo Ent., Inc.*, No. 25-cv-04380 (VM), 2026 WL 203538, at *7–9 (S.D.N.Y. Jan. 27, 2026) (compelling arbitration under Global User Agreement governing both StubHub and viagogo platforms and staying the action); *Kern v. StubHub, Inc.*, No. 24-cv-00871 (AT), 2024 WL 5283923, at *4 (S.D.N.Y. Dec. 17, 2024) (same); *Kaiser v. StubHub, Inc.*, No. 24-cv-00044 (JLR), 2024 WL 3445059, at *4 (S.D.N.Y. July 17, 2024) (same). And numerous other courts across the country applying the same User Agreement—or materially identical predecessor versions—have reached the same conclusion. Because a valid, enforceable arbitration agreement exists and Plaintiff's claims plainly fall within its broad scope,

Defendants request that the Court promptly compel this case to arbitration and stay further proceedings until the arbitration has concluded. *See* Section I.

**Motion to Dismiss:** Alternatively, the Complaint should be dismissed because Plaintiff does not state a claim. Although he complains that StubHub did not disclose that its CEO was an investor in third parties that resold tickets on StubHub's platform or lent money to other resellers, Plaintiff never identifies any particular statement that could have misled him and he does not even allege that any tickets he purchased were sold by these entities, much less that he somehow would have paid less had he known about the relationship between StubHub and these third parties. On the merits, Plaintiff's claims all fail because: (i) his fraud claim fails to satisfy Rule 9(b)'s heightened pleading standard; (ii) his claims under New York General Business Law §§ 349 and 350 fail to state plausible claims for deceptive practices or false advertising; (iii) his unjust-enrichment claim is barred by the parties' express contract; and (iv) his implied-covenant claim fails because Plaintiff has not identified any contractual obligation that StubHub breached or frustrated through the exercise of contractual discretion. *See* Section II.

Whether moved to arbitration or dismissed, this case should not proceed in this Court.

## FACTUAL BACKGROUND

### A. StubHub's User Agreement and Arbitration Clause

StubHub operates an online marketplace that allows registered users to buy and sell event tickets. Wright Decl. ¶ 4. To purchase tickets on StubHub's website or mobile application, a user must complete the checkout process by clicking a "Buy Now" button. *Id.* ¶ 12. Directly above that button, in dark gray text against a white background, StubHub displays the following notice: "By clicking the button below you acknowledge and accept our terms and conditions and privacy

policy."[3] *Id.* The phrases "terms and conditions" and "privacy policy" are offset in bright blue font and are hyperlinked. *Id.*; *Kern*, 2024 WL 5283923, at *2–3 (describing the same interface and finding notice "reasonably conspicuous"). The "terms and conditions" hyperlink takes the user directly to a webpage titled "Global User Agreement" that contains the complete terms and conditions and gives the user the opportunity to review the full terms before proceeding with a ticket purchase. Wright Decl. ¶ 14. The version of the User Agreement in effect from June 2022 is the operative agreement here. *Id.* The first clause of the User Agreement alerts every user, in bolded and capitalized text, to the existence of an agreement to arbitrate:

> **FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

User Agreement (attached hereto as Ex. A) ¶ 1 (capitalization and boldface in original). And under the header "Legal Disputes," this document provides the details of the arbitration agreement:

> You and us each agree, except where prohibited by law, that any and all disputes or claims that have arisen or may arise between you and us relating in any way to or arising out of this or previous versions of the User Agreement . . . or the breach or validity thereof, your use of or access to the Site or Services, or **any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules, rather than in court,** except that you may assert claims in small claims court, if your claims qualify and so long as the matter remains in such court and advances only on an individual (non-class, non-representative basis).

[3] Similar language appears when users create or sign in to their StubHub account. Wright Decl. ¶ 13 (noting that sign-on screen reads "By signing in or creating an account, you agree to our user agreement and acknowledge our privacy policy").

User Agreement ¶ 22.1 (emphasis added). This clause further provides that "[t]his Agreement to Arbitrate is intended to be broadly interpreted" and that the FAA "governs the interpretation and enforcement of this Agreement to Arbitrate." *Id.* This section of the User Agreement also includes a number of other details about the agreement each user makes with StubHub:

- Subsection A of Clause 22.1 contains a class-action waiver, providing that users may bring claims "ONLY ON AN INDIVIDUAL BASIS AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS." *Id.* ¶ 22.1(A) (capitalization in original).

- Subsection B provides that "[a]ll issues, including arbitrability, are for the arbitrator to decide, except the scope or enforceability of this Agreement to Arbitrate . . . shall be for a court of competent jurisdiction to decide." *Id.* ¶ 22.1(B). The arbitrator has "exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation" of the agreement. *Id.*

- Subsection E advises that users "**can choose to reject this Agreement to Arbitrate**" by mailing StubHub a written notice, postmarked within 30 days after first accepting the User Agreement or any subsequent amendment. *Id.* ¶ 22.1(E) (boldface in original). For users' convenience, StubHub also provided an Opt-Out Notice form. *Id.*

### B. Plaintiff Agreed to the User Agreement Each Time He Purchased Tickets

Plaintiff's own Complaint confirms that he transacted on StubHub's platform and agreed to the User Agreement governing each transaction. Specifically, the Complaint alleges that "Plaintiff and Class members entered into a User Agreement with StubHub each time they transacted on the platform." Compl. ¶ 50. In December 2023, Plaintiff purchased two tickets on StubHub to a KISS concert at Madison Square Garden. *Id.* ¶ 21. In September 2024, Plaintiff purchased four tickets on StubHub to a New York Red Bulls v. New York City FC Major League Soccer match. *Id.* ¶ 20. Plaintiff received and used all tickets. *Id.* ¶¶ 20–21. As with every StubHub transaction, Plaintiff could not have completed either purchase without clicking the "Buy Now" button described above—the action that constituted his acceptance of the User Agreement then in effect. Wright Decl. ¶ 16; *see also Kern*, 2024 WL 5283923, at *2 (same finding based on the same declaration and interface); *Kaiser*, 2024 WL 3445059, at *2 (same). And even before

purchasing tickets, Plaintiff agreed every time he created or logged into his StubHub account that "[b]y signing in or creating an account, you agree to our user agreement." Wright Decl. ¶ 13.

Finally, although the User Agreement permitted Plaintiff to opt out of the arbitration and class action waiver provisions, Plaintiff never submitted an opt-out notice. *Id.* ¶¶ 17–18.

### C. Plaintiff Files This Lawsuit

Despite agreeing to a binding arbitration provision and class action waiver, Plaintiff filed a putative class action in this Court alleging fraudulent concealment and fraudulent misrepresentation, violations of state consumer-protection statutes, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 37–51. The crux of Plaintiff's claim is that Defendants failed to disclose that StubHub's CEO held an ownership interest in Andro Capital, a professional ticket reseller that has sold tickets on StubHub's platform since approximately 2008, and StubHub had arrangements with Andro's affiliate, Colloquy Capital, in which StubHub refers certain sellers to Colloquy to potentially secure short-term financing based on those sellers' existing and expected proceeds from sales on StubHub's platform. Plaintiff alleges that these undisclosed relationships rendered StubHub's marketing of itself as a neutral, "fan-to-fan" marketplace misleading. *Id.* ¶¶ 2–3, 15–17. However, the Complaint also admits that payments between these entities were a fraction of a fraction of StubHub's "approximately $9.2 billion in ticket transactions in 2025 alone." *Id.* ¶ 32.[4]

---

[4] The Complaint alleges Andro-related payments to StubHub totaled "approximately $1.6 million in 2023." Compl. ¶ 16. The Complaint draws this data from a Form S-1 registration statement that Holdings filed with the SEC, which also stated that Holdings "generated fee revenue/(expenses) from tickets sold by Andro of zero, $0.1 million and $0.1 million during the years ended December 31, 2024, 2023 and 2022, respectively" and as to the referral program with Colloquy, that "[n]o fees are payable under this agreement by us or Colloquy." *See* Ex. D, StubHub Holdings, Inc. Registration Statement (Form S-1/A) at 183, F-62. On a motion to dismiss, the Court may consider documents quoted or referenced in the complaint. *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

## ARGUMENT

When both a motion to compel arbitration and a motion to dismiss are before the Court, the Court "should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *see also Kaiser*, 2024 WL 3445059, at *3. In deciding a motion to compel arbitration, the Court applies "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Accordingly, a motion to compel arbitration should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [the] movant is entitled to judgment as a matter of law." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015).

If the Court reaches Defendants' alternative motion to dismiss, Plaintiff's claims must satisfy the pleading standards of Rules 8(a) and 12(b)(6). To survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, it need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8 and must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). In addition, Plaintiff's claims for fraudulent concealment and fraudulent misrepresentation are also subject to the heightened pleading requirements of Rule 9(b), which requires a plaintiff to plead the circumstances constituting the alleged fraud with particularity. *See Kottler v. Deutsche Bank AG,* 607 F. Supp. 2d 447, 462 (S.D.N.Y. 2009).

## I. THE COURT SHOULD COMPEL PLAINTIFF TO ARBITRATE HIS CLAIMS INDIVIDUALLY

The Federal Arbitration Act provides that written arbitration agreements in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also* Ex. A, User Agreement ¶ 22.1 ("The Federal Arbitration Act governs the interpretation and enforcement of this Agreement to Arbitrate"). Consistent with that mandate, the Supreme Court has repeatedly recognized the FAA's "liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Accordingly, where a dispute is subject to a valid arbitration agreement, the FAA requires courts to enforce the parties' agreement by compelling arbitration and staying the litigation. 9 U.S.C. §§ 3–4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

In determining whether to compel arbitration, a court considers "(1) whether a valid agreement to arbitrate under the contract in question exists and (2) whether the particular dispute in question falls within the scope of that arbitration agreement." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 99 (S.D.N.Y. 2015). Both requirements are satisfied here. However, where (as here) the parties have clearly and unmistakably delegated questions of arbitrability to the arbitrator, the Court need not decide that second question of whether a particular dispute falls within the arbitration agreement's scope. Instead, any challenge to arbitrability must be resolved by the arbitrator in the first instance. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65–66 (2019).

### A. A Valid Written Agreement to Arbitrate Exists

Whether a valid arbitration agreement exists "is determined by state contract law." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (holding state contract law applies). Under the User Agreement's choice-of-law provision (Clause 21.1), California law governs for U.S. residents, although New York and California apply "substantially similar rules" on this question. *Meyer*, 868 F.3d at 74. Under California law, internet contracts are classified based on how the user manifests assent. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). StubHub's checkout interface constitutes a "sign-in wrap" agreement—a contract "where the consumer is purportedly bound by clicking" a button "which they would otherwise need to click to continue with their transaction." *Kern*, 2024 WL 5283923, at *4-5. Sign-in wrap agreements are "enforceable contract[s] based on inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Keebaugh*, 100 F.4th at 1014. Both prongs are readily satisfied here.

#### 1. StubHub's Website Provided Plaintiff with Conspicuous Notice

The *Kern* court—examining the very same checkout interface, User Agreement, and arbitration clause at issue here—held that StubHub provides "reasonably conspicuous notice" of its terms. 2024 WL 5283923, at *3. The court found that:

> The textual notice . . . is displayed immediately above the "Buy Now" button, appears in dark gray font and stands out against the white background. The phrase "terms and conditions" is offset in bright blue font, which prominently identifies and distinguishes it from the rest of the notice and indicates an associated hyperlink. When clicked, the hyperlink opens the User Agreement, which contains, in bolded and capitalized text, a prominent notice of the arbitration agreement.

*Id.*; *compare Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) (finding notice sufficient where "displayed directly above or below the action button" and the hyperlink was "conspicuously distinguished from the surrounding text in bright blue font"). Nothing in the Complaint suggests that the checkout interface Plaintiff encountered in December 2023 and September 2024 differed materially from the interface that the *Kern* and *Kaiser* courts found provided sufficient notice of StubHub's arbitration provision. Other courts examining this same StubHub checkout interface have reached an identical conclusion. *See, e.g.*, *Hong v. StubHub, Inc.*, No. 2:24-cv-03318-SB-JC, 2024 WL 4720924, at *7 (C.D. Cal. Sept. 9, 2024) (finding the notice above the "Buy Now" button "reasonably conspicuous" and noting the "proximity of the notice to the 'Buy Now' button on StubHub.com could not be closer"); *Christensen v. StubHub, Inc.*, No. 2:25-cv-01957-JNW, 2026 WL 937969, *6–7 (W.D. Wash. Apr. 7, 2026) (same, as to both StubHub's sign-in and purchase pages); *Ajzenman v. Office of the Commissioner of Baseball*, CV 20-3643 DSF (JEMx), 2020 WL 6037140, at *5, *8 (C.D. Cal. Sept. 14, 2020) (compelling arbitration under StubHub's User Agreement); *Berlinger*, 2026 WL 203538, at *5 (same, where "the design and content of [viagogo's] purchase flow is nearly identical to the design and content of StubHub's ticket purchasing platform" examined in *Kern*). This Court should reach the same conclusion.

**2. Plaintiff Unambiguously Assented to the Arbitration Agreement**

Under California law, "[a] user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. StubHub's textual notice does exactly that: it explicitly states that "[b]y clicking the button below you acknowledge and accept our terms and conditions." Wright Decl. ¶ 12. The *Kern* court held that this language

"explicitly notif[ied] [Plaintiffs] of the legal significance of the action [they had to] take to enter into [the] contractual agreement." 2024 WL 5283923, at *3 (quoting *Berman*, 30 F.4th at 858).

By creating an account, signing in, and purchasing tickets from StubHub, Plaintiff "unambiguously manifested [his] assent to the arbitration agreement and effectuated a valid arbitration agreement between [himself] and StubHub."[5] *Id.*; *see also Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 389–90 (S.D.N.Y. 2025) (finding plaintiff "unambiguously assented to that [website visitor] agreement as a sign-in wrap contract" where plaintiff "click[ed] through the conspicuous notice of the change[.]") (citing *Berman*, 30 F.4th at 856–57); *Penning v. NVIDIA Corp.,* 2026 WL 1433313 (N.D. Cal. May 21, 2026) (finding click-through arbitration provision enforceable where "the text above the action buttons states that by clicking any of the buttons 'you accept our Terms of Service,'" which "clearly denotes" that taking that action "will act as a manifestation of the user's intent to be bound."); *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476–77 (9th Cir. 2024) (finding plaintiff assented to terms of use by clicking the "Place Order" button to complete his purchase) (citing *Berman*, 30 F.4th at 857). Other courts examining StubHub's identical "Buy Now" notice have likewise found that a user's click manifests unambiguous assent. *See Hong*, 2024 WL 4720924, at *8 (holding that the plaintiff "unambiguously manifested his intent to be bound by [StubHub's] terms, including its arbitration agreement, when he clicked the 'Buy Now' button after being conspicuously advised that doing so would bind him to the terms"); 2026 WL 937969, at *4 (same); *Ajzenman*, 2020 WL 6037140, at *8 (C.D. Cal. Sept. 14, 2020) (same).

[5] Plaintiff clicked "Buy Now" twice—once in December 2023 and once in September 2024—to complete his purchases. Compl. ¶¶ 20–21; Wright Decl. ¶ 16.

Critically, Plaintiff's own Complaint eliminates any possible dispute about contract formation. Plaintiff *expressly alleges* that he "entered into a User Agreement with StubHub each time [he] transacted on the platform." Compl. ¶ 50. This judicial admission is fatal to any argument that no agreement was formed. *See Kaiser*, 2024 WL 3445059, at *4 ("Plaintiff does not dispute that he entered into the User Agreement with StubHub or that the User Agreement contains an agreement to arbitrate."). The June 2022 User Agreement was the version in effect during Plaintiff's December 2023 and September 2024 transactions. Wright Decl. ¶ 14. In short, the Complaint's allegations make clear there is not even a plausible dispute here on this point: a valid, binding agreement to arbitrate exists.

**B. Questions of Arbitrability Are Delegated to the Arbitrator**

The User Agreement provides that "[a]ll issues, including arbitrability, are for the arbitrator to decide," with the sole exception that "the scope or enforceability of this Agreement to Arbitrate" shall be for a court. Ex. A, User Agreement ¶ 22.1(B). This is a clear delegation of threshold arbitrability questions to the arbitrator. *See Rent-A-Ctr.*, 561 U.S. at 68–70 (holding that parties may agree to delegate gateway arbitrability issues to the arbitrator). The Supreme Court has confirmed that when a contract delegates the arbitrability question to an arbitrator, courts must respect that choice: "[i]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Schein*, 586 U.S. at 69.

The User Agreement independently confirms this delegation by providing that arbitration "will be conducted by the AAA under the Rules," which vests the arbitrator with the power to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim." Courts have repeatedly held that incorporating the AAA's (or JAMS's) arbitration rules into an agreement constitutes independent "clear and unmistakable evidence" of the parties' intent to delegate arbitrability to the

arbitrator. *See Patrick,* 93 F.4th at 480–81; *Contec Corp. v. Remote Sol. Co.,* 398 F.3d 205, 208 (2d Cir. 2005) (holding when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, [that] serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.").

### C. Even If the Court Decides Arbitrability, Plaintiff's Claims Fall Within the Scope of the Arbitration Clause

However, should the Court determine arbitrability itself, the result is the same. In assessing scope, "arbitration is preferred 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Thomas James Assocs., Inc. v. Jameson*, 102 F.3d 60, 65 (2d Cir. 1996). Where the arbitration clause is broad, "there is a presumption that the claims are arbitrable." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995); *see also Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 121 (2d Cir. 1991) (holding that a broadly worded arbitration clause creates "the strong presumption in favor of arbitrability applies with even greater force").

StubHub's arbitration clause covers "any and all disputes or claims . . . relating in any way to or arising out of" the User Agreement, the user's "use of or access to the Site or Services, or any tickets or related passes sold or purchased through the Site or Services." Ex. A, User Agreement ¶ 22.1. Both the *Kern* and *Kaiser* courts held that this language is "the paradigm of a broad clause," giving rise to a presumption of arbitrability. *Kern*, 2024 WL 5283923, at *4; *Kaiser*, 2024 WL 3445059, at *5. All four of Plaintiff's claims arise directly from his use of StubHub's platform, the tickets he purchased through that platform, and the User Agreement itself:

- The fraud claim alleges StubHub concealed its CEO's financial interest in a platform seller, deceiving Plaintiff into transacting on the platform. Compl. ¶¶ 37–42.

- The GBL §§ 349/350 claims allege deceptive marketing of StubHub's platform. *Id.* ¶¶ 43–45.
- The unjust enrichment claim seeks return of fees and commissions Plaintiff paid through the platform. *Id.* ¶¶ 46–48.
- The implied covenant claim is expressly premised on the User Agreement itself. *Id.* ¶ 50.

Each claim "aris[es] out of" or "relat[es] in any way" to Plaintiff's "use of or access to the Site or Services" and the "tickets . . . purchased through the Site or Services." Ex. A, User Agreement ¶ 22.1. The *Kaiser* court held that even fraud claims arising from an allegedly unauthorized ticket transaction fell within this clause because "[a]ll four of Plaintiff's claims . . . are based on StubHub's conduct and marketing practices on its website" and "therefore arise out of or relate 'in any way' to [Plaintiff's] use or access of StubHub's website." 2024 WL 3445059, at *5; *see also Berlinger*, 2026 WL 203538, at *7 (finding consumer-protection claims fell within the scope of a materially identical broad arbitration clause); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 854 (2d Cir. 1987) (finding fraud claims fall within scope of broad arbitration clause); *Credit Suisse Sec. (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 107 (S.D.N.Y. 2007) ("'[A]rising out of,' 'relating to,' or similar words" in arbitration clauses are "regularly construed to encompass . . . tort claims associated with the underlying contract").

Here, because Plaintiff's fraud, consumer-protection, unjust-enrichment, and implied-covenant claims are all premised on the circumstances of his ticket purchases and StubHub's related disclosures, they, too, "arise[] from [Plaintiff's] purchase of a product through Defendants' website, emanating from the purchaser-seller relationship created by the website," and fall within the scope of an arbitration clause covering disputes "relating in any way to" that website. *See, e.g., Heabeart v. Coinbase, Inc.*, No. 25-cv-9197 (JSR), 2026 WL 1250578, at *3 (S.D.N.Y. May 7, 2026) (Rakoff, J.) (granting motion to compel arbitration after finding that plaintiff's non-

securities claims must be arbitrated under the plain language of the operative User Agreement); *Smith v. RPA Energy, Inc.*, 732 F. Supp. 3d 278, 290 (S.D.N.Y. 2024) (Rakoff, J.) (granting motion to compel arbitration after finding reasonable notice and unambiguous assent to terms of service contained in arbitration provision); *Hamm v. Capsule Corp*., No. 22-CV-05435 (JSR), 2022 WL 4468028, at *5 (S.D.N.Y. Sept. 26, 2022) (Rakoff, J.) (granting motion to compel arbitration after finding that plaintiff's claims clearly arise out of plaintiff's use of defendant's services).

**D. Plaintiff's Claims Against StubHub's Chairman and CEO Are Arbitrable**

Plaintiff also purports to bring claims against Eric Baker, who is StubHub's founder, chairman and CEO. Although Mr. Baker did not personally sign the User Agreement, "traditional principles" of state contract law permit a non-signatory to enforce an arbitration agreement, including through equitable estoppel. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). In this Circuit, to invoke equitable estoppel, a non-signatory must show that (1) "the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations," and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Ragone v. Atl. Video at Manhattan Ctr*., 595 F.3d 115, 126–27 (2d Cir. 2010). Both elements are satisfied here.

*First*, Plaintiff's claims against Mr. Baker are "intimately founded in and intertwined with" the User Agreement. Every count of the Complaint is pleaded jointly against "Defendants"—a term used for both StubHub and Mr. Baker—and rests on the allegation that "Defendants" represented StubHub as a neutral marketplace and concealed Mr. Baker's ownership interest in a platform seller. Compl. ¶¶ 1, 38–51. Plaintiff's own theory is that he "entered into a User Agreement with StubHub each time [he] transacted on the platform," *id*. ¶ 50, and every claim

against Mr. Baker arises from that same platform and transactions. There is no claim against Mr. Baker that is independent of the User Agreement or of Plaintiff's use of StubHub's Site or Services.

*Second*, the relationship between Mr. Baker and StubHub readily satisfies the second estoppel requirement. Mr. Baker, according to the Complaint, "directs StubHub's operations." *Id.* ¶¶ 8, 12. He is not an unrelated third party who Plaintiff alleges acted adversely to, or independently of, StubHub. Indeed, Plaintiff's own Complaint treats Mr. Baker and StubHub as a single, unified enterprise throughout, alleging that "Defendants" collectively made the representations and omissions at issue and collectively "received and retained fees, commissions, and other financial benefits" from Plaintiff's purchases. *Id.* ¶¶ 38–47. That is precisely the sort of close corporate relationship and interchangeable treatment that the Second Circuit has found sufficient to bind a signatory plaintiff to arbitrate with a closely affiliated non-signatory defendant. *See Ragone*, 595 F.3d at 127–28 (holding that estoppel was warranted where plaintiff treated a non-signatory as her co-employer); *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70–71 (2d Cir. 2005) (signatory plaintiffs estopped from avoiding arbitration with non-signatory defendants alleged to have "acted in concert" with the signatory to commit the same wrong). Mr. Baker is at least as closely related to StubHub as the affiliated co-employer non-signatory in *Ragone*. California law compels the identical result. Because the User Agreement's choice-of-law provision selects California law to govern "any claim, dispute or matter arising under or in connection with this User Agreement," California's equitable estoppel doctrine applies with equal force.[6] Accordingly, Mr. Baker is entitled to compel arbitration of Plaintiff's claims against him.

---

[6] *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1129 (9th Cir. 2013) (adopting similar test as New York). California courts have explained that "[a] signatory to an agreement cannot . . . have it both ways: it cannot on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand,

### E. The Court Should Stay This Action Pending Arbitration

Section 3 of the FAA provides that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. As the Supreme Court recently confirmed, "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that "FAA mandate[s] stay" where all claims referred to arbitration); *Kern*, 2024 WL 5283923, at *4 (staying case pending arbitration); *Kaiser*, 2024 WL 3445059, at *11–12 (same). Defendants, therefore, request that the Court stay this action in its entirety pending the completion of arbitration.[7]

## II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Should the Court decline to compel arbitration, the Complaint should be dismissed because Plaintiff has failed to state a plausible claim for relief on any of his four causes of action.

### A. Plaintiff Fails to State a Claim for Fraudulent Concealment / Fraudulent Misrepresentation

To state a fraudulent concealment claim under California law, Plaintiff must allege that Defendants concealed a material fact they had a duty to disclose, did so with intent to defraud, that Plaintiff was unaware of the fact and would have acted differently had it been disclosed, and that

---

deny the arbitration provision's applicability because the defendant is a non-signatory." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 840 (N.D. Cal. 2007).

[7] Although Plaintiff purports to bring this case as a class action, no motion for class certification has been filed, and this motion therefore concerns only Plaintiff's individual claims. The User Agreement also contains an enforceable class action waiver requiring Plaintiff to pursue any claims solely on an individual basis. Ex. A, User Agreement ¶ 22.1(A); *see also Capolongo v. Spotify USA Inc.*, No. 25-cv-9216 (JGK), 2026 WL 1179653, at *6 (S.D.N.Y. Apr. 30, 2026) (dismissing class claims with prejudice because the parties' agreement required individual arbitration).

the concealment caused Plaintiff's damages. *Knox v. Dean*, 140 Cal. Rptr. 3d 569, 583 (Ct. App. 2012); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 n.8 (2d Cir. 2006) (noting the same elements for fraud claim under New York law). This claim is subject to Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy this standard in this Circuit, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993); *see also Rattagan v. Uber Techs., Inc.*, 324 Cal. Rptr. 3d 433, 465 (Cal. 2024) ("This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.'"). Plaintiff's fraud claim here fails for at least three independent reasons.

*First,* Plaintiff fails to allege that StubHub made any false statement, much less a material one. The Complaint identifies three allegedly misleading statements: that StubHub is a "marketplace for fans to buy and sell tickets," "does not own, possess, or sell tickets," and is "a technology platform that connects independent buyers and sellers." Compl. ¶¶ 14, 24, 38. Plaintiff further claims that he was misled because StubHub failed to disclose CEO Baker's ownership interest in Andro Capital. *Id*. ¶¶ 38–42. But the Complaint does not identify any particular communication to Plaintiff that misled him, much less with the specificity that Rule 9(b) demands. Plaintiff vaguely references StubHub's "marketing" and website statements that it is a "marketplace for fans" (Compl. ¶¶ 1, 14, 24, 38), but fails to identify the specific content, date, or context of any statement that was allegedly rendered misleading by the omission. These deficiencies are fatal under Rule 9(b). *See Nguyen v. FXCM Inc*., 364 F. Supp. 3d 227, 233–38

(S.D.N.Y. 2019) (dismissing fraud claim based on defendant's alleged "undisclosed interest in [a] market maker" because the complaint's allegations lacked factual support that makes inference of culpability plausible). The statements Plaintiff identifies plainly do not represent that every seller is an individual fan or that StubHub has no commercial relationship with any seller. Plaintiff's own allegations reflect his awareness that commercial resellers play a substantial role, alleging that "[i]ndustry researchers estimate" that professional resellers "account for a substantial majority – as much as 70 to 80 percent – of ticket inventory on major secondary ticketing platforms," not just StubHub. Compl. ¶ 4. Moreover, the nature of StubHub's relationship with Andro and Colloquy could not render these statements materially misleading because that relationship was microscopic against the scale of StubHub's overall business. The Complaint alleges the StubHub platform facilitated "approximately $9.2 billion in ticket transactions in 2025 alone." *Id.* ¶ 32. By any measure,[8] the alleged relationship is immaterial as a matter of law. *See Welch v. TD Ameritrade Holding Corp.*, No. 07 Civ. 6904 (RJS), 2009 WL 2356131, at *38 (S.D.N.Y. July 27, 2009) (concluding that a narrow alleged omission regarding profits was immaterial as a matter of law); *In re Duke Energy Corp. Sec. Litig.,* 282 F. Supp. 2d 158, 160–61 (S.D.N.Y. 2003) (Rakoff, J.) (collecting cases holding deviations of up to 9% are immaterial as a matter of law).

*Second*, Plaintiff fails to plead intent to defraud. The Complaint's scienter allegations are entirely conclusory, alleging that Defendants "knew or recklessly disregarded" that the alleged

[8] The Complaint alleges that StubHub "earned fees from Andro's ticket sales, owed Andro millions of dollars in ticket proceeds and related costs, paid Andro's affiliate approximately $1.6 million in 2023 . . . and agreed to cover certain of Andro's ticket-management costs." Compl. ¶ 16. The Complaint admits that these figures are taken from the Form S-1 Registration Statement that Holdings filed with the SEC (*id.* ¶ 15), but omits most of the numbers disclosed in that document quantifying the size of the relationship. It said StubHub generated $100,000 of fees from tickets sold by Andro in 2022 and 2023 and zero dollars in 2024. *See* Ex. D, StubHub Holdings, Inc. Registration Statement (Form S-1/A) at 183, F-62.

omissions were material and would affect consumers' purchasing decisions, but the Complaint does not plead any facts about the statements made to him in connection with his ticket purchases, how or why those statements were allegedly misleading, or even that his tickets had any connection to Andro or Colloquy in the first place. Compl. ¶¶ 38–42. That is insufficient under Rule 9(b). *See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 187 (2d Cir. 2004) ("Fraud [claims] . . . require[] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."); *Martin v. New Am. Cinema Grp., Inc.*, No. 1:22-cv-05982 (JLR), 2023 WL 2024672, at *7 (S.D.N.Y. Feb. 15, 2023) (dismissing fraud claim where "conclusory, non-specific allegations" that defendants knew statements were false were insufficient to establish fraudulent intent).

*Third,* the Complaint also fails to plead reliance or injury with the requisite particularity. Plaintiff alleges that he purchased tickets in December 2023 and September 2024, received and used all of them, and does not claim that his tickets were invalid, canceled, or undelivered. Compl. ¶¶ 20–23, 30–31. He further alleges only that he would not have purchased tickets on StubHub, or would have paid less, had he known about Baker's alleged interest in Andro and StubHub's alleged relationship with Colloquy. *Id.* ¶¶ 22, 27–28, 42. Those allegations do not identify any particular misstatement on which Plaintiff <u>***actually***</u> relied in either purchase, nor do they allege facts showing that the alleged omission caused Plaintiff to pay more than the tickets were worth that was traceable to StubHub's relationship with Andro or Colloquy. *See Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 253 (S.D.N.Y. 2013) (dismissing fraud claim for failure to plead reliance and injury suffered as a result of any reasonable reliance). Plaintiff's failure to plead that he actually relied upon, or was injured by, the alleged misrepresentations warrants dismissal as a

matter of law. *See Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 624 (S.D.N.Y. 2013) (dismissing fraud claims for failure to allege reasonable reliance).

**B. Plaintiff Fails to State a Claim Under GBL §§ 349/350**

Plaintiff's claims under New York General Business Law §§ 349 and 350 fail because the Complaint does not plausibly allege a materially misleading statement or omission, causation, or injury. To state a claim under GBL § 349, a plaintiff must plausibly allege that "(1) defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam). Claims under § 350 are governed by the same "reasonable consumer" standard and require that the challenged representation be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021). These claims fail for at least three independent reasons:

*First*, Plaintiff's GBL claims are premised on the same alleged false statements as Plaintiff's fraud claim and otherwise fail to identify any affirmative statements that would be likely to deceive or mislead a reasonable consumer. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (dismissing claim where relevant statements would not be likely to deceive or mislead a reasonable consumer). This determination can be, and often is, made as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). Here, no reasonable consumer would have been misled by the statements that StubHub "does not own, possess, or sell tickets" or that it is "a technology platform that connects independent buyers and sellers," because those statements accurately describe StubHub's role in the transactions and do not represent that professional resellers are absent from the platform. A reasonable consumer could not have

understood StubHub's general marketplace description as a guarantee that no professional reseller participated in the platform. *See, e.g., Adeghe v. Procter & Gamble Co.*, 2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) (dismissing GBL claims where "Plaintiff's claim reflects little more than 'her selective interpretation of [an] individual word[ ] from the Product's labeling.'"). Moreover, even by Plaintiff's own telling, the alleged relationship between StubHub and Andro/Colloquy is not material to the at-issue statements. Plaintiff alleges that Andro-related payments to StubHub totaled "approximately $1.6 million in 2023," Compl. ¶ 16, while also alleging that StubHub processed "approximately $9.2 billion in ticket transactions in 2025 alone." *Id.* ¶ 32.[9] To survive dismissal, a GBL §§ 349 and 350 claim must allege action that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 607 (2d Cir. 2024). Even accepting those allegations as true, no reasonable consumer would understand StubHub's general descriptions of its marketplace to be materially misleading because StubHub did not disclose an alleged relationship of that scale. *See, e.g., Tasini v. AOL, Inc.,* 851 F. Supp. 2d 734, 744 (S.D.N.Y. 2012) (holding that a website's self-description as a "free forum or platform for ideas" was not materially misleading merely because the website generated profits); *In re Sling Media Slingbox Advert. Litig*., 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016) (holding that an undisclosed plan to add advertising was not a material omission absent allegations that consumers expected an "ad-free experience"); *In re Prime Energy Consumer Litig*., 803 F. Supp. 3d 242, 254 (S.D.N.Y. 2025) (holding that a 7–11% higher-than-advertised caffeine content was not materially misleading); *Wynn v. Topco Associates, LLC*, No. 19-CV-11104 (RA), 2021 WL

[9] The SEC filing from which the Complaint sources the $1.6 million figure (Compl. ¶ 16) also states that StubHub generated zero fee revenue in 2024 and $100,000 in fee revenue in 2022 and 2023. *See* Ex. D, StubHub Holdings, Inc. Registration Statement (Form S-1/A) at 183, F-62.

168541, at *5 (S.D.N.Y. Jan. 19, 2021) (collecting cases) (holding that a "Vanilla" label was not materially misleading despite the flavor not being derived exclusively from natural vanilla extract).

*Second*, Plaintiff also fails to plead that the alleged misstatements caused any injury. To establish the required causal connection between an alleged misrepresentation and an injury under GBL §§ 349 or 350, a plaintiff must plausibly allege that he actually viewed the challenged statement before making the purchase and identify where, when, and how he encountered it. *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018); *see also Gale v. IBM*, 9 A.D.3d 446, 447 (N.Y. App. Div. 2004). Although the Complaint quotes several generic statements and slogans, it never alleges that Plaintiff saw any of those statements before purchasing either of his tickets, much less when, where, or how he encountered them. Without those allegations, Plaintiff cannot plausibly plead that the challenged statements caused his alleged injury. *See Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005) ("[T]o assert a GBL § 349 claim, a plaintiff must allege that s/he was *exposed* to the alleged misrepresentations.") (emphasis in original).

*Third*, even if Plaintiff had alleged that he viewed and relied on a particular statement when making his ticket purchases, the Complaint fails to plead that Plaintiff suffered any injury at all. Plaintiff's own allegations confirm that he received and used the tickets he purchased, and that his alleged injury is not that StubHub sold him tickets it secretly owned or failed to deliver, but instead that StubHub did not disclose alleged relationships involving professional resellers and related entities. The Complaint does not even allege that any of Plaintiff's tickets were sold by Andro or by a seller who received financing from Colloquy or any other relationship that could have affected the validity of the tickets, their price, the fees disclosed at checkout, or any term of Plaintiff's

bargain. That theory is insufficient under New York law. The New York Court of Appeals has rejected the proposition that consumers suffer injury under GBL § 349 merely because they purchased a product they allegedly would not have purchased but for the defendant's conduct. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999).

Accordingly, Plaintiff fails to state a claim under either GBL § 349 or § 350.

**C. Plaintiff's Unjust Enrichment Claim Is Foreclosed by the Express Contract**

It is well settled that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). Plaintiff himself alleges that a User Agreement governed each transaction. Compl. ¶ 50. Because the parties' rights and obligations regarding ticket purchases are defined by that express contract, Plaintiff cannot simultaneously seek recovery on a quasi-contractual theory of unjust enrichment arising from the same transactions. The unjust enrichment claim (Count III) must be dismissed. This rule holds under either New York or California law, both of which could bear on Plaintiff's quasi-contract claim. *See Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim"); *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 114 Cal. Rptr. 2d 109, 125 (Ct. App. 2001) ("[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where ... express binding agreements exist and define the parties' rights."); *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Ct. App. 2012) (same).

**D. Plaintiff's Implied Covenant Claim Fails**

To state a claim for breach of the implied covenant of good faith and fair dealing under California law, Plaintiff must allege "(1) the existence of some specific contractual obligation; and (2) interference with [P]laintiff's performance of the contract or failure to cooperate with the

plaintiff." *Kaurloto v. U.S. Bank, N.A.*, No. 16-cv-06652-JFW-GJSx, 2016 WL 6808117, at *6 (C.D. Cal. Nov. 17, 2016). California recognizes "an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 97 Cal. Rptr. 2d 151 (Cal. 2000). The covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat. Inc.*, 100 Cal. Rptr. 2d 352 (Cal. 2000). Here, Plaintiff has not brought a breach-of-contract claim presumably because there was no right under the User Agreement that was somehow frustrated. Plaintiff purchased, received, and used his tickets. No term of his contract with StubHub was allegedly frustrated by a lack of good faith and fair dealing (or any other reason). This precludes Plaintiff's implied covenant claim as a matter of law. *See Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1156 (N.D. Cal. 2013) ("The 'plaintiff must identify the specific contractual provision that was frustrated.'"); *Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *6–7 (N.D. Cal. Feb. 27, 2008) ("Inter-Mark has not identified any specific contractual provision in support of its breach of contract claim. As a result, its allegation that Intuit breached an implied covenant of good faith and fair dealing is nothing more than a bare legal assertion, supported by no factual allegations.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order (1) compelling Plaintiff to submit his claims to individual arbitration in accordance with the parties' arbitration agreement; and (2) staying this action pending the completion of such arbitration; or (3) in the alternative, dismissing the Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated: July 29, 2026
New York, New York

Respectfully submitted,

By: */s/ Jason C. Hegt*
Jeff G. Hammel
Jason C. Hegt
Jooyoung Yeu
Jessica Barragan
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: Jeff.Hammel@lw.com
Jason.Hegt@lw.com
Jooyoung.Yeu@lw.com
Jessica.Barragan@lw.com

*Attorneys for StubHub Holdings Inc. and Eric H. Baker*

**CERTIFICATE OF COMPLIANCE**

I, Jason C. Hegt, an attorney duly admitted to practice before this Court, hereby certify that this motion complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Rules for Judge Jed S. Rakoff. The foregoing Memorandum of Law in Support of Defendants' Motion to Compel Arbitration, or, In the Alternative, to Dismiss the Complaint, was prepared using Microsoft Word and contains 8,572 words. In making this calculation, I have relied on the page count of the word-processing program used to prepare the document.

Dated: July 29, 2026
New York, New York

*/s/ Jason C. Hegt*
Jason C. Hegt