UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS SANQUINI INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>STUBHUB, INC.; ERIC H. BAKER; and DOES 1-10,<br><br>Defendants. | 26-cv-5880 (JSR)<br><br>OPINION |

JED S. RAKOFF, U.S.D.J.

On September 15, 2026, this Court entered a "bottom-line" Order granting defendants' motion to compel arbitration, staying this case pending completion of the arbitration proceedings, and denying defendants' motion to dismiss without prejudice as moot. See ECF No. 32. This Opinion sets forth the reasons for that Order.

## I. Background

Defendant StubHub, Inc. ("StubHub") is an online platform for reselling tickets.[1] See ECF No. 24 ("Wright Decl.") ¶ 4. In December 2023, Plaintiff Louis Sanquini purchased two tickets to a concert in New York on StubHub. See ECF No. 1 ("Compl.") ¶ 21.

[1] For purposes of resolving the instant motion, the Court considers "all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." Gary Null & Assocs. Inc. v. DNE Nutraceuticals Inc., 2018 WL 6991065, at *5 (S.D.N.Y. Dec. 20, 2018) (quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017)).

Sanquini received and used both tickets. See id. Approximately nine months later, in September 2024, he purchased four tickets to a soccer match on StubHub, which he again received and used. See id. ¶ 20.

At the time of Sanquini's purchases, a user on StubHub's website and mobile application completed a transaction by clicking a button labeled "Buy Now." See Wright Decl. ¶¶ 5, 12. Immediately above the "Buy Now" button, a notice informed the user that, "[b]y clicking the button below[, they] acknowledge and accept [StubHub's] terms and conditions and privacy policy." Id. ¶ 12 (internal quotation marks omitted). The notice appeared in dark-colored text on a white background. The phrase "terms and conditions" was underlined, displayed in a different font color, and hyperlinked. See id.




When clicked, the "terms and conditions" hyperlink directed users to a webpage entitled "Global User Agreement" (the "User Agreement") which contained the complete terms and conditions.

See id. ¶ 14. The first clause of the User Agreement stated in bolded and capitalized lettering:

> **FOR ALL USERS RESIDING IN THE UNITED STATES, PLEASE BE ADVISED: CLAUSE 22 OF THIS AGREEMENT CONTAINS AN AGREEMENT TO ARBITRATE, WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST US TO BINDING AND FINAL ARBITRATION, UNLESS YOU OPT-OUT. UNLESS YOU OPT OUT: (1) YOU WILL ONLY BE PERMITTED TO PURSUE CLAIMS AGAINST US ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING, AND (2) YOU WILL ONLY BE PERMITTED TO SEEK RELIEF (INCLUDING MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF) ON AN INDIVIDUAL BASIS.**

See ECF No. 24-1 ("Ex. A") at 2. Clause 22 provided that "any and all disputes or claims that have arisen or may arise between you and us relating in any way to or arising out of . . . the User Agreement (including this Agreement to Arbitrate[)] or the breach or validity thereof," "use of or access to the Site or Services," or "any tickets or related passes sold or purchased through the Site or Services shall be resolved exclusively through final and binding arbitration." Id. at 16. That clause further stated that "[a]ll issues, including arbitrability, are for the arbitrator to decide, except the scope or enforceability of this Agreement to Arbitrate . . ., shall be for a court of competent jurisdiction to decide." Id. at 17.

On July 13, 2026, Sanquini brought this putative class action for fraudulent concealment/fraudulent misrepresentation, unjust enrichment, breach of the implied covenant of good faith

and fair dealing, and violation of New York General Business Law §§ 349 and 350, alleging that he would not have purchased his tickets (or would have purchased at a reduced price) had he known about certain undisclosed relationships between StubHub, StubHub's CEO (defendant Eric H. Baker), and a seller on StubHub's platform and the seller's affiliate. See Compl. ¶¶ 37-51. In particular, Sanquini alleges that, although "StubHub markets itself to consumers as a 'neutral marketplace for fans to buy and sell tickets,'" Baker "is also the part owner and managing director of Andro Capital, an entity that has sold tickets on StubHub . . . since approximately 2008," and "StubHub has separately entered into agreements with Andro's affiliate, Colloquy Capital, to provide short-term financing . . . to other large-scale, professional ticket resellers" on StubHub. Id. ¶¶ 1-2.

Defendants moved to compel arbitration or, in the alternative, to dismiss the complaint for failure to state a claim. See ECF No. 23. After the parties briefed these motions, the Court held oral argument and issued a "bottom-line" Order granting defendants' motion to compel arbitration, staying this case pending completion of the arbitration proceedings, and denying the motion to dismiss without prejudice as moot. See ECF No. 32. The analysis that follows explains that Order.

## II. Legal Standard

"The standard of review for a motion to compel arbitration . . . is one similar to that applicable for a motion for summary judgment." Gary Null & Assocs., 2018 WL 6991065, at *5 (quoting Meyer, 868 F.3d at 74). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (internal quotation marks omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Id. (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)).

## III. Analysis

Defendants ask this Court to refer this action to arbitration because of the above-quoted arbitration agreement contained in the User Agreement. "A court faced with . . . a petition [to compel arbitration] typically must decide two questions: Whether the parties agreed to arbitrate, and whether the claims fall within the scope of the arbitration agreement." CollegeStreet Imp. & Exp. (Tinajin) Co. v. Loyalist, LLC, 824 F. Supp. 3d 432, 443 (S.D.N.Y. 2026) (internal quotation marks omitted). Because both prongs are met here, the Court grants defendants' motion to compel arbitration.

### A. Whether the Parties Agreed to Arbitrate

Sanquini argues that there is an issue of fact as to whether the parties agreed to arbitrate. See Nicosia, 834 F.3d at 229. But Sanquini has offered no evidence of his own casting doubt on whether he agreed to submit his claims to arbitration. He does not affirmatively deny that he clicked the "Buy Now" button shown above, nor does he claim that he opted out of arbitration as the above-quoted paragraph gave him the opportunity to do. Instead, Sanquini raises a slew of objections to the evidence StubHub relies on to establish that an agreement to arbitrate was made. See ECF No. 27 ("Mem. in Opp.") at 12-18. The Court concludes that StubHub has provided the Court with evidence sufficient to show that Sanquini agreed to arbitrate and that Sanquini's evidentiary objections are insufficient to create a genuine dispute of fact on that issue.

**1. The Parties Formed an Arbitration Agreement**

The parties do not dispute that California law applies to the question of whether the parties agreed to arbitrate. See Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002); ECF No. 26 ("Mem. in Support") at 9; Mem. in Opp. at 7-8. Where, as here, "users are required to advance through a . . . screen which states '[b]y [clicking this button,] I agree to the Terms of Service,'" the agreement is called a "sign-in wrap agreement." Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1014 (9th Cir. 2024). "Under California law, a sign-in wrap

agreement may be an enforceable contract based on inquiry notice" if "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound" and "the consumer takes some action, such as clicking a button . . ., that unambiguously manifests his or her assent to those terms." Id. (internal quotation marks omitted).

Here, StubHub's website and mobile application provided Sanquini with reasonably conspicuous notice of the arbitration agreement. In support of their motion, defendants filed a declaration of James Wright, StubHub's former Chief Technology Officer and VP Engineering, who recreated the ticket purchase process as purchasers would have experienced it in December 2023 and September 2024 (when Sanquini completed his transactions). See Wright Decl. ¶¶ 1, 5. Wright's declaration establishes that the notice of the arbitration agreement was displayed immediately above the "Buy Now" button in dark-colored font on a white background. The phrase "terms and conditions" was underlined and displayed in a different font color to distinguish it as a hyperlink. When clicked, the hyperlink directed the user to the User Agreement containing the arbitration agreement, and a notice of the arbitration agreement appeared in bolded and capitalized letters in the very first clause. See id. ¶¶ 12, 14; Kern v. StubHub, Inc., 2024 WL 5283923, at *3 (S.D.N.Y. Dec. 17, 2024).

Moreover, in using StubHub's website and mobile application, Sanquini took action that manifested his assent to be bound by the arbitration agreement. The notice above the "Buy Now" button expressly stated that, "[b]y clicking the button[, users] acknowledge and accept our terms and conditions and privacy policy." Wright Decl. ¶ 12 (internal quotation marks omitted). Because the notice "explicitly advised [Sanquini] that the act of clicking will constitute assent to the terms and conditions of [the User A]greement," Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 857 (9th Cir. 2022), Sanquini unambiguously manifested his assent by clicking the "Buy Now" button to complete his transactions, see Wright Decl. ¶ 16.

**2. Sanquini's Evidentiary Objections Fail**

Sanquini's evidentiary objections do not create a dispute of fact as to whether he entered into an arbitration agreement. "[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Id. Sanquini has submitted no evidence of his own

demonstrating the existence of a dispute of fact. And, in any case, Sanquini's evidentiary objections fail.

Objection 1. Sanquini first objects to the screenshots in Wright's declaration on the basis of Rules 901 and 1002 of the Federal Rules of Evidence. See Mem. in Opp. at 13-14. This objection is without merit. Rule 901 requires the proponent to substantiate "that the item is what the proponent claims it is," Fed. R. Evid. 901(a), but "does not erect a particularly high hurdle" and is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification," Crawford v. Tribeca Lending Corp., 815 F.3d 121, 126 (2d Cir. 2016). Wright states that he "reviewed the source code used to render the checkout page . . ., as well as the source-code version history reflecting changes to that page over time." Wright Reply Decl. ¶ 5. He states that he "conducted that review together with senior engineering personnel directly involved in the implementation and maintenance of StubHub's website and mobile application checkout process." Id. This testimony would be sufficient for a reasonable jury to conclude that Wright's screenshots are what they purport to be: the checkout pages Sanquini encountered.

The best evidence rule provides that "[a]n original writing, recording, or photograph is required in order to prove

its content." Fed. R. Evid. 1002. "When presented with arbitration agreements in contracts formed online between companies and their customers, courts routinely rely on affidavits and declarations . . . and screenshots . . . submitted by the company's employee describing and depicting how the customer manifested assent to the company's arbitration provision." Worthington v. JetSmarter, Inc., 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019) (collecting cases). On a motion to compel arbitration, the evidence need only be available in an admissible form at trial. See Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001).

Objection 2. Sanquini next objects to Exhibit A to Wright's declaration on the basis that defendants have not authenticated the exhibit as the User Agreement in effect at the time of his transactions. See Mem. in Opp. at 14-15; ECF No. 27-4 ("Objections") at 3-4. But Wright declares that he "was the Chief Technology Officer . . . and VP Engineering of StubHub, Inc.," that he "ha[s] personal knowledge about the organization and business operations of StubHub and the mobile application and websites it operates, including StubHub.com," and that Exhibit A is "a true and correct copy of the Terms in effect from June 2022 to December 2025, including during [Sanquini's] purchases." Wright Decl. ¶¶ 1-2, 14. Moreover, the document is titled "Global User Agreement," states that it was "[l]ast

[u]pdated" in June 2022, and bears StubHub's name. Ex. A at 2. Defendants produced enough evidence to show that the User Agreement could be authenticated at trial. See Fed. R. Evid. 901(b)(1), (4).

Objection 3. Sanquini also objects to paragraph 15 of Wright's declaration, which states: "By virtue of the above processes, [Sanquini] agreed to the Terms on StubHub's website — as reflected in Exhibit A — for all of [his] transactions at issue in this litigation." Wright Decl. ¶ 15. Sanquini contends that this statement is an improper legal conclusion. See Mem. in Opp. at 15. But even assuming the statement is a legal conclusion, the Court relies not on that statement to determine if an agreement to arbitrate was made but on Wright's description of the process of purchasing tickets through StubHub.com and StubHub's mobile application, including his description of the notice of StubHub's terms and conditions provided to users. See Wright Decl. ¶¶ 12-14.

Objection 4. Sanquini then objects to paragraph 16 of Wright's declaration on the basis that Wright has not established personal knowledge of how the StubHub website and mobile application operated. See Objections at 6. Paragraph 16 states: "Between June 2022 through the present (including on all the dates of Plaintiff's StubHub bookings), Plaintiff would not have been able to use StubHub.com or StubHub's mobile

application to purchase tickets without agreeing to StubHub's Terms by clicking the 'Buy Now' button." Wright Decl. ¶ 16. But Wright declares that he was the Chief Technology Officer of StubHub and that he "reviewed the source code used to render the checkout page containing the 'Buy Now' button, as well as the source-code version history reflecting changes to that page over time." Wright Reply Decl. ¶ 5. Wright's personal investigation provides a sufficient basis to find that he had personal knowledge of how the website and mobile application operated. See Fed. R. Evid. 602; Galvez v. JetSmarter, Inc., 2019 WL 4805431, at *5 (S.D.N.Y. Sep. 30, 2019).

Objection 5. Sanquini additionally objects to paragraph 18 of Wright's declaration, which states: "I have reviewed StubHub's records that identify those purchasers who have previously submitted opt-out notices. StubHub has no record of [Sanquini] submitting any such notice." Wright Decl. ¶ 18. Sanquini argues that Wright has not shown that this absence-of-record evidence is admissible under Rule 803(7) and that he has familiarity with the procedures for mailed opt-out notices. See Mem. in Opp. at 16.

"The party seeking to admit the absence of a record as evidence under [R]ule [803(7)] must first show that a record was regularly kept for a matter of that kind." United States v.

Shestakov, 2025 WL 507523, at *4 n.7 (S.D.N.Y. Feb. 14, 2025) (internal quotation marks omitted). Here, Wright declares that:

> StubHub maintains records of opt-out notices it receives from purchasers in the ordinary course of its regularly conducted business activities. Opt-out notices received by StubHub are logged and stored electronically in StubHub's record systems. Those records are created at or near the time StubHub receives an opt-out notice by a person with knowledge of its receipt, and it is StubHub's regular practice to create and maintain those records.

Wright Reply Decl. ¶ 11. Wright further declares that he was Chief Technology Officer of StubHub and personally reviewed StubHub's records of purchasers from whom StubHub received opt-out notices, which establishes that he was knowledgeable about StubHub's record-keeping processes. See id. ¶ 12; United States v. Lauersen, 348 F.3d 329, 342 (2d Cir. 2003), judgment vacated on other grounds, 543 U.S. 1097 (2005). And Sanquini offers no evidence demonstrating "a lack of trustworthiness." Fed. R. Evid. 803(7)(C). This objection also fails.

Objection 6. Last, Sanquini objects that "Exhibit A identifies StubHub, Inc. — not StubHub Holdings, Inc. — as the contracting entity for users of the StubHub website and [mobile] application."[2] Mem. in Opp. at 16. "Defendants have not

---

[2] Sanquini raises three additional objections to other exhibits attached to the declarations defendants filed in support of their motion. Objection 7 concerns Exhibit B to Wright's declaration, which is the December 2025 Global User Agreement in effect after Sanquini's transactions; Objection 8 concerns Exhibit C to Wright's declaration, which is a blank opt-out form; and Objection 9 concerns Exhibit D to Jason Hegt's declaration, which is the

established through Exhibit A," Sanquini contends, "that StubHub [Holdings, Inc.] itself entered into an agreement with [Sanquini] or may enforce StubHub, Inc.'s agreement." Id. But the parties filed a joint stipulation and proposed order, which the Court entered, to substitute StubHub, Inc. as a defendant in place of StubHub Holdings, Inc. See ECF No. 22; ECF No. 31. This objection is therefore moot.

Because Sanquini's evidentiary objections do not create a genuine dispute of fact as to whether Sanquini agreed to arbitrate and, in any case, fail, the Court concludes that the parties formed an arbitration agreement.

**B. Whether the Arbitration Agreement is Unenforceable**

Sanquini next contends that the arbitration agreement is unenforceable because it is unconscionable under California law. The parties disagree about who should decide whether the arbitration agreement is unconscionable and, if it is for the Court to decide, whether the agreement is unconscionable. Because the arbitration agreement does not clearly and unmistakably delegate issues of enforceability to an arbitrator, those questions remain with the Court. And the Court concludes that the arbitration agreement is not unconscionable under California law.

prospectus for StubHub's initial public offering. The Court does not rely on these exhibits to determine whether the parties agreed to arbitrate.

**1. The Court Decides the Question of Enforceability**

Sanquini argues that the question whether the arbitration agreement is unconscionable should be decided by this Court, not by an arbitrator. The Court agrees. "Under the [Federal Arbitration Act], threshold questions of arbitrability presumptively should be resolved by the court and not referred to the arbitrator." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019). "[T]he presumption may be overcome where the parties clearly and unmistakably agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute, or whether it is enforceable." Id. at 251 (internal quotation marks omitted).

Here, the arbitration agreement does not clearly and unmistakably delegate the issue of enforceability to an arbitrator. Although the agreement states that "[t]he arbitrator . . . shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate," the agreement also states that "[a]ll issues, including arbitrability, are for the arbitrator to decide, except the scope or enforceability of this Agreement to Arbitrate . . . shall be for a court of competent jurisdiction

to decide."[3] Ex. A at 17 (emphasis added). Moreover, a severability provision in the arbitration agreement provides "if an arbitrator or court decides that any part of this Agreement to Arbitrate is invalid or unenforceable, the other parts of this Agreement to Arbitrate shall still apply," which plainly contemplates courts deciding issues of enforceability. Id. at 18 (emphasis added). Because the arbitration agreement does not clearly and unmistakably delegate issues of enforceability to an arbitrator, the Court decides these issues. See Davitashvili v. Grubhub Inc., 131 F.4th 109, 117-18 (2d Cir. 2025). Issues of scope, or whether a user's claims fall within the scope of the arbitration agreement, remain with the Court for the same reason.

**2. The Arbitration Agreement is Not Unconscionable**

Under California law, "[u]nconscionability consists of both procedural and substantive elements." Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 246 (2012). "Both procedural unconscionability and substantive unconscionability must be shown, but they need not be present in the same degree and are evaluated on a sliding scale." Id. at

[3] Sanquini argued for the first time at oral argument that the arbitration agreement is self-contradictory and that the entire agreement is therefore void and unenforceable. The contours of this new argument are unclear, and the argument is waived in terms of this motion because, as Sanquini conceded, the argument was never briefed. See generally Mem. in Opp.; see, e.g., In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 137 (S.D.N.Y. 2008); Design Strategy, Inc. v. Davis, 469 F.3d 284, 300 (2d Cir. 2006).

247 (internal quotation marks omitted). "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. (cleaned up).

In the main, Sanquini argues that the provision permitting StubHub to amend the arbitration agreement renders the agreement unconscionable. See Mem. in Opp. at 8-9. But putting aside that no such amendment is directly relevant to the instant dispute, the provision states that StubHub "will notify [users] of amendments to this Agreement to Arbitrate by posting the amended terms on [its website] at least thirty (30) days before the effective date of the amendments and by sending notice via email to [the user's] email address on file." Ex. A at 19 (emphasis added). And, "[i]f [the user] do[es] not agree to the amended terms," the user "may close [their] account within the thirty (30) day period and . . . will not be bound by the amended terms." Id. (emphasis added). These terms are not "overly harsh," "unduly oppressive," or "so one-sided as to shock the conscience." OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 129-30 (internal quotation marks omitted). Nor are other terms in the arbitration agreement unreasonably favorable to StubHub. See id. at 130 (explaining that unconscionable terms "may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms

that undermine the nondrafting party's reasonable expectations").

Moreover, as for procedural unconscionability, the record reveals neither oppression nor surprise in the formation of the agreement. See id. at 126. Sanquini could opt out of the arbitration agreement, was provided thirty days after each transaction to do so, and the arbitration agreement was only over three pages long. See id. at 126-27. Moreover, the arbitration agreement was not hidden within a prolix form: the arbitration agreement appears in a separate clause in the User Agreement titled "Legal Disputes," which is displayed in large, bold lettering, and the first clause of the User Agreement provides, in bolded and capitalized lettering, notice of the arbitration agreement. See Pinnacle Museum Tower Ass'n, 55 Cal. 4th at 247 n.12. The Court therefore concludes that the arbitration agreement is not unconscionable.

### C. Whether Sanquini's Claims Fall Within the Scope of the Arbitration Agreement

Because there is an enforceable arbitration agreement, the Court next considers whether Sanquini's claims fall within the scope of that agreement.[4] Sanquini does not dispute that the

[4] As previously discussed, because the arbitration agreement does not clearly and unmistakably delegate the issue of scope to an arbitrator, that question is for this Court to decide. See Davitashvili, 131 F.4th at 117-18.

arbitration agreement governs his claims against StubHub. After all, the arbitration agreement covers "any and all disputes or claims that have arisen or may arise . . . relating in any way to or arising out of this or previous versions of the User Agreement . . . or the breach or validity thereof," Sanquini's "use of or access to the Site or Services," or "any tickets or related passes sold or purchased through the Site or Services." Ex. A at 16 (emphasis added). Sanquini's claims that he (and putative class members) purchased tickets he would not have purchased, or would have (nonetheless) purchased at a reduced price, had he known about certain relationships between StubHub, Baker, and a seller on StubHub's platform and the seller's affiliate, all arise out of Sanquini's use of StubHub's services. The claims thus fall within the scope of the arbitration agreement and must be arbitrated. See Daly v. Citigroup Inc., 939 F.3d 415, 421 (2d Cir. 2019).

**D. Whether Sanquini's Claims Against Baker Must Be Arbitrated**

Sanquini finally contends that defendant Baker, a non-signatory to the arbitration agreement, is not entitled to compel Sanquini to arbitrate his claims under the doctrine of equitable estoppel. See Mem. in Opp. at 19-21. The Court disagrees. Although "state law governs whether a non-signatory may enforce an arbitration [agreement]," where, as here, both parties rely on Second Circuit law, we "proceed with the

equitable estoppel inquiry as governed by Second Circuit precedent." Doe v. Trump Corp., 6 F.4th 400, 412 & n.8 (2d Cir. 2021) (internal quotation marks omitted); see Mem. in Opp. at 20; ECF No. 28 at 8-9. Where the claims "the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the [signatory] has signed" and the "relationship among the parties [is] of a nature that justifies a conclusion that the [signatory] which agreed to arbitrate . . . should be estopped from denying an obligation to arbitrate a similar dispute with" the nonsignatory, the nonsignatory can compel the signatory to arbitrate his claims. Id. at 412-13 (internal quotation marks omitted).

Like other cases in which the Second Circuit has "applied estoppel against a party seeking to avoid arbitration," this case involves a close "corporate relationship" – Baker is StubHub's founder, CEO, and Chairman – that was disclosed to Sanquini. Id. at 413 (cleaned up); see Compl. ¶ 2. Sanquini also treats Baker and StubHub "as a single unit." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 177 (2d Cir. 2004) (internal quotation marks omitted). Having alleged that Baker and StubHub worked together to deceive him, see, e.g., Compl. ¶¶ 6, 22, 30, 37-51, Sanquini "cannot now escape the consequences of those allegations by arguing that [Baker] and [StubHub] lack the requisite close relationship" to give rise to equitable

estoppel, Denny v. BDO Siedman, L.L.P., 412 F.3d 58, 70 (2d Cir. 2005).

Moreover, "the subject matter of the dispute" between Sanquini and StubHub "is factually intertwined with the dispute" between Sanquini and Baker. Ragone v. Atl Video at Manhattan Ctr., 595 F.3d 115, 128 (2d Cir. 2010). "It is, in fact, the same dispute." Id. Sanquini's four causes of action are asserted without differentiating between Baker and StubHub. See Compl. ¶¶ 37-51. Sanquini is therefore properly estopped from avoiding arbitration with Baker.

## IV. Conclusion

The Court thus reconfirms its September 15, 2026 "bottom-line" Order granting defendants' motion to compel arbitration, staying this case pending completion of the arbitration proceedings, and denying the motion to dismiss without prejudice as moot. See ECF No. 32.

New York, NY
September 21, 2026

JED S. RAKOFF, U.S.D.J.